IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Marcus D. Greene, ) | Civil Action No. 9:13-3157-MGL-BM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| Berkeley County Jail, Officer Morton ) | |
| and Officer Biering, ) | |
| ) | |
| Defendants. ) | |
| _____) | |



This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.§ 1983. Plaintiff, a pre-trial detainee at the Berkeley County Detention Center, alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion to dismiss or for summary judgment on May 5, 2014. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on May 6, 2014, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to adequately respond, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendants' motion on June 3, 2014, as well as a supplemental memorandum on July 14, 2014.

1

Defendants' motion is now before the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that during his period of incarceration at the Berkeley County Detention Center[3] he had problems with the Defendant Morton, a jail officer, making racial slurs in his presence. Plaintiff alleges that he reported Morton's conduct to "administration", following which "on the date of the incident" Morton began to "stalk" him in the unit and make "racial slurs directly to me . . . .". Plaintiff alleges that Morton "got directly in my face" while following him, and that when Plaintiff asked "why are you messing with me", Morton responded by making some more racial remarks. Plaintiff alleges that at the time he had cups of water and tea in both of his hands, as well as some books under his arm held against his body.

Plaintiff further alleges that the Defendant Biering (another jail officer) was "posted" outside of his room, and that when he got to his room "Officer Morton grabbed me and Officer Biering jump on my back from behind and they slammed me to the floor." Plaintiff alleges that Officer Biering began choking him while Officer Morton was hitting him in his side, back and legs with his "handcuff around his hand like brass knuckles". Plaintiff alleges that he was then placed in the segregation unit, but was not charged. Plaintiff does say that he "received a grievance

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Plaintiff does not provide a date of occurrence for the conduct alleged in his Complaint.



hearing", where Officer Morton stated that Plaintiff was the last detainee in the common area and had refused "lock-down", which Plaintiff alleges was not true. Plaintiff alleges that the Defendants Morton and Biering planned "this assault on me and assumed that I would put-up a fight so that they could really beat me bad . . . .".

Plaintiff seeks monetary damages, as well as medical treatment for his chronic back pain and surgery. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant Joseph Morton has submitted an affidavit wherein he attests that he was a Detention Officer at the Berkeley County Detention Center during the relevant time period. Morton attests that on the morning of November 14, 2011, he and Officer Biering were locking down the upper floor of the B-Pod, and "were down to the last two inmates". Morton attests that Plaintiff was at a cell door (not his own) talking with another inmate about swapping books. Morton attests that he asked Plaintiff several times to head to his cell, and that Plaintiff looked at him and said "make me". Morton attests that he then attempted to put Plaintiff into an "escort hold" to gain his compliance and get him into his cell, but that Plaintiff is "significantly larger in size and weight than I am" and began pulling away from him, dragging both of them into Officer Biering, who was able to secure Plaintiff's other arm. Morton attests that Plaintiff continued to resist and began pulling away from both him and Officer Biering, and that due to Plaintiff's continued resistance Officer Biering got Plaintiff down onto the floor so that they could secure Plaintiff's hands behind his back in handcuffs.

Morton attests that, after this altercation, he personally observed Plaintiff walk without assistance across the top floor walkway, down the flight of stairs, across the bottom floor, and into the holding cell, and not once did he hear Plaintiff complain to him or anyone else that



Plaintiff had any injury. Morton attests that he, however, sustained an injured left knee in the altercation, and suffered moderate swelling in his knee for sometime thereafter. Morton attests that he only used the amount of force reasonably necessary to secure Plaintiff, who was actively resisting their efforts to gain his compliance, and to get him into his cell for lock down. Morton attests that he did not use force in this incident with any malicious or sadistic intent to harm, and that as far as he knows, neither he nor Officer Biering caused any injury whatsoever to the Plaintiff. See generally, Morton Affidavit.

The Defendant Billy Wade Biering has also submitted an affidavit wherein he attests that he was a Detention Officer at the Berkeley County Detention Center during the relevant time period. Biering attests that on the morning of November 14, 2011, he and Officer Morton were locking down the upper floor of the B-Pod, when he observed Plaintiff standing outside of a cell down the row and talking with an inmate within the cell. Biering attests that he observed Officer Morton and the Plaintiff as they began walking towards him, which was towards Plaintiff's cell, at which time Plaintiff stopped in front of cell B-20, which was his assigned cell. Biering attests that he heard Plaintiff tell Officer Morton that he did not disrespect officers, so don't be disrespecting him, at which time Morton told the Plaintiff that he needed to go into his cell. Biering attests that Plaintiff replied "put me in my room", or something to that effect, which was a defiant action and constituted a refusal to obey an officer's direct order. Biering attests that Officer Morton then placed the Plaintiff in the "escort position" in an attempt to gain his compliance and put him in his cell, but that Plaintiff began pulling away from Officer Morton and, in the process, Plaintiff rammed into him [Biering]. Biering attests that to the best of his recollection Plaintiff is over six feet tall and weighs approximately three hundred pounds.



Biering attests that when Plaintiff rammed into him, he was able to gain control of Plaintiff's free arm and also attempted to place Plaintiff in the escort position so that they could secure him in his cell. Biering attests that Plaintiff continued to resist and pushed into him, but that he [Biering] was able to get Plaintiff onto the floor so that he and Officer Morton could place Plaintiff's arms behind his back and secure them with handcuffs. Biering attests that another officer was also able to assist him and Officer Morton in getting Plaintiff to his feet.

Biering attests that Plaintiff never once complained to them of any injury, and that he walked unassisted across the top tier, down the stairs, across the floor and into the A-2 holding cell, where he was to await disciplinary action for his refusing to lock down. Biering attests that he only used the amount force reasonably necessary to assist Officer Morton in securing the Plaintiff, as Plaintiff was actively resisting their efforts to gain his compliance and get him into his cell for lock down. Biering attests that he did not use force in this incident with malicious or sadistic intent to harm, and that as far as he knows neither he nor Officer Morton caused any injury whatsoever to the Plaintiff. See generally, Biering Affidavit.

The Defendants have also submitted copies of the November 14, 2011 Incident Reports filed by the Defendants with respect to this incident, as well as copies of some Administrative/Disciplinary Review Board documents and a Reprimand Report. Finally, both Plaintiff and the Defendants have submitted a copy of a video of the November 14, 2011 incident.[4] The undersigned has reviewed this video, which shows what appears to be a verbal confrontation or dispute between Plaintiff and one or more officers, and Plaintiff being taken to the ground,

---

[4]Plaintiff submitted a copy of this video in a separate filing on January 27, 2014. See Court Docket No. 21.



following which he is led from the facility in handcuffs. There is no audio.

Plaintiff argues in his memorandum opposing summary judgment that the affidavits by the Defendants Morton and Biering and "untrue", and that the Incident Reports are "forgeries." Plaintiff argues that Morton and Biering "conspired to stalk" him and to then assault the Plaintiff while he was defenseless. As an attachment to his response in opposition filed June 3, 2014, Plaintiff has submitted what purports to be an affidavit from Inmate Kenon Stevens, who attests that on May 21, 2014 he witnessed a conversation between the Plaintiff and a "Sgt. Mizzel" wherein Sgt. Mizzel stated that they had a recording of Plaintiff's Review Board hearing and that he would make arrangements for the Plaintiff to listen to or request a copy. See Stevens Affidavit.

## Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material

6



fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

First, the Defendants correctly note that the Berkeley County Jail is a building or group of buildings and/or facilities. Inanimate objects such as buildings, facilities, and grounds do not act under color of state law, and are not a "person" subject to suit under § 1983. See Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D. Va. 1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301(E.D. N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Therefore, the "Berkeley County Jail" is entitled to dismissal as a party Defendant in this case.

With respect to Plaintiff's excessive force claim against the Defendants Morton and Biering, since he was a pre-trial detainee during the time period at issue, his claim is evaluated under the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979).[5] When reviewing a claim of excessive use of force under the Fourteenth Amendment, the Court should consider 1) the need for the application of force,  2) the relationship between the need and

---

[5]In any event, regardless of whether Plaintiff's claims are analyzed under the Fourteenth Amendment or Eighth Amendment (which applies to convicted persons), the same standards generally apply. Bullock v. Powers, No. 94-6366, 1995 WL 25513 at *1 n. (4th Cir. Jan. 17, 1995); Barnes v. Dedmondt, No. 08-0002, 2009 WL 3166576 at * 6 (D.S.C. Sept. 29, 2009).

7



the amount of force that was used,  3) the extent of the injury inflicted, and 4) whether the force was applied in a good faith effort to maintain and restore discipline, or maliciously and sadistically for the very purpose of causing harm.  Williams v. Smith, No. 08-2841, 2009 WL 4729975 at * 2 (D.S.C. Dec. 3, 2009); Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008); see also Whitley v. Albers, 475 U.S. 312, 321 (1986); Majette v. GEO Group, Inc., No. 07-591, 2010 WL 3743364, at * 6 (E.D.Va. Sept 22, 2010); see Hudson v. McMillian, 503 U.S. 1, 7 (1992) [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm].

Considered in the light most favorable to the Plaintiff, the evidence reflects that the Plaintiff and the Defendant Morton became engaged in a verbal dispute concerning Plaintiff's activities and location in the jail unit.[6]  While Plaintiff claims that Morton was "stalking" him and that he and Biering engaged in a "conspiracy" to assault him, Plaintiff has presented no evidence to support these conclusory statements.  See House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege *facts* which, if proven, would entitle the plaintiff to

---

[6]Plaintiff also alleges that Morton was using racial slurs against him during this confrontation.  While the undersigned has considered Plaintiff's claim to be true for purposes of summary judgment, the use of offensive or racially charged language by a prison guard towards a prisoner is not itself a violation of the Constitution.  Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994) aff'd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994); Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Batista v. Rodriguz, 702 F.2d 393, 398 (2nd Cir. 1985); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007); Musto v. Trinity Food Service, Inc., No. 07-231, 2010 WL 3565723 at * 13 (M,D.Fla. 2010)[Although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal harassment does not state a claim for relief in a federal civil rights action."].



relief"][emphasis added]. The videotape provided to the Court shows Plaintiff ascending the stairs in the prison unit and stopping at several cell doors, with a prison guard (presumably Morton) thereafter ascending the same stairs but not immediately thereafter. The videotape also does confirm that Plaintiff was much larger than the prison guard (again, presumably Morton). The videotape then shows, after Plaintiff has again stopped at a cell door, he and the prison guard engaging in a conversation, Plaintiff turning and facing the prison guard, followed by a short altercation ending in Plaintiff being taken to the ground. The entire physical altercation lasts, at most, only about 30 seconds. The videotape then shows that Plaintiff is helped to his feet and is led in handcuffs back down the steps and out of the compound, escorted by several correctional officers.

Even considered in the light most favorable to the Plaintiff, the undersigned does not find that the evidence before this Court is sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used in this instance. The Defendants both attest, and the incident reports provided to the Court reflect, that the physical confrontation ensued only after Plaintiff refused a direct order to head to his cell. Plaintiff simply states in a conclusory manner in his verified complaint that both Morton and Biering "stalked" him and provoked him into a confrontation, and argues in his filings in opposition to summary judgment that the Defendants were unjustified in their actions. However, contrary to Plaintiff's contention in his brief, the videotape provided to the Court does not "confirm" his claim that excessive, unjustified force was used against him in this case. Rather, the videotape shows Plaintiff stopping at cell doors on the cat walk, apparently conversing with people, that Morton did not even go up to the cat walk until Plaintiff was already up there, and that Plaintiff was taken to the floor by Morton and Biering and placed in handcuffs following some kind of dispute between him and the prison guards. While Plaintiff argues



that this use of force against him was unjustified, he has presented no evidence to show that an application of force by the prison guards was not necessary, as his own exhibit (the video) reflects some type of dispute occurring, while Plaintiff also concedes in his verified complaint that he and Morton were having words prior to the altercation. The video also confirms that Plaintiff was unrestrained at the time, is much larger than Morton, and that they were on a cell block that was populated with other jail inmates.

County detention facilities are dangerous places, and jail officials are entitled to take necessary precautions to protect themselves from risk of harm and injury at the hands of inmates. It is certainly not unreasonable that Morton could have perceived a threat based on the facts presented, notwithstanding Plaintiff's assertion that he was not the aggressor. Morton had no way of knowing what Plaintiff, a much larger and unrestrained inmate, was thinking, and physical force is sometimes justified in order to gain compliance of inmates and insure institutional security, the security of jail employees, as well as the inmates themselves. It is only when the force used under such circumstances is constitutionally excessive that a viable § 1983 claim is presented. Williams v. Benjamin, 77 F.3d 763, 761 (4th Cir. 1996)[because prison officials are entitled to use appropriate force to quell prison disturbances, and because these officials oftentimes must act under pressure without the luxury of a second chance, in order for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm].

Plaintiff's own self serving statement that he posed no threat to the officers and that there was no justification for force being used against him is not alone sufficient to establish a constitutional claim for excessive use of force. See, e.g., Riley v. Honeywell Technology Solutions,

10



Inc., 323 Fed.Appx. 276, 278, n. 4 (4th Cir. 2009)[Holding that Plaintiff's "self-serving contentions" that he was treated unfairly "were properly discounted by the district court as having no viable evidentiary support"]; Nat'l Enters., Inc. v. Barnes, 201 F.3d 331, 335 (4th Cir. 2000)[Holding that a self-serving affidavit was insufficient to survive summary judgment]; King v. Flinn & Dreffein Eng'g Co., No. 09-410, 2012 WL 3133677, at * 10 (W.D.Va. 2012)[Finding no genuine issue of fact where only evidence opposing summary judgment was "uncorroborated and self-serving" testimony], citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

        Additionally, when evaluating the relationship between the need and the amount of force that was used, the videotape clearly shows that the entire incident where force was used against the Plaintiff lasted only a few (30 or less) seconds, following which Plaintiff was brought to his feet and led out of the compound without further incident or force being used.  While Plaintiff alleges in his Complaint that the Defendants were choking and/or unnecessarily striking him with the handcuffs, this is not evident from the videotape (which was shot at a distance), and the short period of time in which force was used coupled with the fact that there is no evidence of any force being used after Plaintiff was brought back to his feet and led from the compound does not support an inference that the amount of force used was constitutionally excessive under the circumstances. Cf. Wilson v. Flynn, 429 F.3d 465, 469 (4th Cir. 2005)[Lack of evidence that officers used any improper force after restraining a prisoner "distinguishes [Plaintiff's] case from many in which we have held the Plaintiff has alleged an excessive force claim."]; see also Hudson, 503 U.S. at 7  [the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm]; Bell, 441 U.S. at 540 ["[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action"]; see also Johnson v. Glick, 481 F.2d 1028,



1033 (2d Cir. 1973) ["not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"]; Grissom v. Roberts, No. 09-3128, 2009 WL 2601260 at * 6 (D.Kan. Aug. 24, 2009) ["Not every isolated battery or injury to an inmate amounts to a federal constitutional violation"].

There is also no evidence on the videotape that Plaintiff suffered any injury as a result of the force used against him, nor has Plaintiff himself presented any medical or other evidence whatsoever to show that he suffered any significant injury as a result of this altercation. See Strickler v. Waters, 989 F.2d 1375, 1380-1381 n. 9 (4th Cir. 1993) [the mere incantation of physical or mental injury is inadequate to survive a motion for summary judgment]; see also Silvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995)[Explaining that while the party opposing summary judgment is entitled to the benefit of inferences that can be drawn from the evidence, "[p]ermissible inferences must still be within the range of probability" and that "[w]hether an inference is reasonable cannot be decided in a vacuum; it must be considered in light of the competing inferences to the contrary"(internal quotation marks omitted)]. Although it is not required that Plaintiff show he suffered more than a de minimis injury to maintain an excessive force claim; see Wilkins v. Gaddy, 130 S.Ct. 1175, 1179-1180 (2010)[Noting that the notion that significant injury is a threshold requirement for stating an excessive force claim was rejected in Hudson, 503 U.S. at 7]; the "absence of [a] serious injury" nevertheless remains relevant in an Eighth Amendment inquiry. Wilkins, 130 S.Ct. at 1179-1180 [holding that the extent of injury may provide some indication of the amount of force applied, and stating that "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim"], citing to Hudson, 503 U.S. at 9 (quoting Johnson, 481 F.2d at 1033); see also Ellerbe v.

Roach, No. 08-3118, 2010 WL 3361703, at * 3 (E.D.N.C. Aug 24, 2010).

Finally, in concluding that the evidence is not sufficient to create a genuine issue of fact as to whether the amount of force used here resulted in the violation of a *constitutional right*, it is important to note that the case at bar is readily distinguishable from the recent Fourth Circuit decision in Mann v. Failey, No. 13-6446, 2014 WL 3511878 (4th Cir. July 17, 2014).  In Mann, the Fourth Circuit allowed an excessive force claim to proceed where there was evidence an officer had sprayed Plaintiff's prison cell with several bursts of pepper spray for failing to comply with orders to back up and be restrained, that the Plaintiff (Mann) was then left in the closed cell for forty-five minutes while not being granted multiple requests to take a shower, and was then placed in a strip cell that was not decontaminated from the chemicals for the next five days.  The Plaintiff's allegations in Mann also included that the prison guard in that case had grabbed Mann by his left arm and the back of the crotch chain between his legs and dragged him twenty-five yards to the medical unit, in the process smashing his testicles and causing him extreme pain and agony.  On another occasion, after Mann had struck a prison guard, he was first wrestled to the floor by four other officers and then, even after he was subdued and stopped resisting, the prison guard began kicking and punching him in the head, striking him numerous times until one of the other officers interposed his body between the officer and Mann.  Nevertheless, the prison guard continued to strike the Plaintiff's head and face with her fists as he was carried "in hog tie form" fifty yards to the holding cell.  On yet another occasion, after Mann had engaged in a confrontation with guards and had reached the point where he was down and not resisting, he was attacked by the guards, with one officer slamming his face into the concrete floor while picking up a bottle of fecal matter and pouring it over his face.  Other officers also continuously punched, kneed, kicked and choked him

13



until he lost consciousness.

These facts are not even remotely comparable to the conduct alleged in the case at bar. Therefore, while Plaintiff may conceivably have a state law claim he could assert arising from this incident, or some further administrative remedy he could pursue, the undersigned does not find the evidence before this Court is sufficient to create a genuine issue of fact as to whether constitutionally excessive force was used under the circumstances in this case. See Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right]; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]. Plaintiff's excessive force claim asserted as a constitutional violation should therefore be dismissed.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

August 28, 2014
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

